GARN v. LOCKARD.

1. LIBEL AND SLANDER—PRIVILEGE—MALICE.

A communication made in good faith to a public officer, in relation to matters within the scope of his duties, is privileged, in the absence of express malice. The question whether the occasion was privileged is for the court; but, if the circumstances surrounding the publication are such that an inference of malice may be drawn from them, the question of malice is one for the jury.

2. SAME—EVIDENCE.

Testimony that the statement containing the alleged slanderous words was made to a police officer in a public place, in the presence of others, is evidence for the jury on the question of malice.

3. TRIAL—DIRECTING VERDICT—WRONG REASON FOR RIGHT RULING.

A judgment for the defendant, based upon the direction of a verdict for erroneous reasons, will not be sustained on the ground that the record shows the action to have been barred by the statute of limitations, where the circumstances of the trial indicate that the plaintiff was prevented from making proofs tending to remove the bar.

Error to Eaton; Smith, J.    Submitted December 3, 1895.    Decided January 16, 1896.

Case by Leah V. Garn against Arthur M. Lockard for slander.    From a judgment for defendant on verdict directed by the court, plaintiff brings error.    Reversed.

*Powers & Stine* and *Garry C. Fox*, for appellant.

*Lyman H. McCall* and *McPeek & Jones*, for appellee.

MONTGOMERY, J.    The plaintiff prosecuted defendant in an action of slander.    The words complained of charged, in effect, that plaintiff was the keeper of a brothel, and are charged as having been uttered in the presence and hearing of Lewis Biggs and others.    Substantially the language imputed to defendant was proven to have been used by him in the presence and hearing of Mr. Biggs, who testified that he heard a part of the conversation between Lockard and Pollock, in which the name of Mrs. Garn was mentioned, and stated that it was "on Sunday, right down in front of the post-office, and Herb Pollock and Os Pierce, and some one else, I think, was also there."    The evidence shows that Mr. Pierce was at the time city marshal, and that, in the course of the conversation, defendant expressed a desire to have the marshal watch plaintiff's house, and secure evidence against her, and upbraided the officers for not doing their duty in suppressing such crimes in the city.    The circuit judge was of the opinion that this statement was privileged, and that there was no proof of actual malice, and for these reasons directed a verdict for the defendant.

1. There can be no doubt at this day that a communication made to a public officer whose duty it is to act in reference to the matter, if made *bona fide*, and with the purpose of aiding in the detection or prosecution of offenses against the law, is privileged, in the absence of express malice.    *Wieman* v. *Mabee*, 45 Mich. 484.    And it is also true, as contended by defendant's counsel, that

the question whether the occasion was privileged is for the court. *Bacon* v. *Railroad Co.*, 66 Mich. 166. It is likewise a recognized rule that the presence of disinterested persons at a time when a communication is made respecting a crime, which one has a right to make, does not ordinarily and *per se* operate to remove the privilege. *Toogood* v. *Spyring*, 4 Tyrw. 594; *Dunman* v. *Bigg*, 1 Campb. 269, note; *Brow* v. *Hathaway*, 13 Allen, 242; *Moore* v. *Thompson*, 92 Mich. 498. But, when the occasion is such that an inference of malice may be drawn from the circumstances, it is the province of the jury to determine whether malice exists. As was said in *Bacon* v. *Railroad Co.*, *supra:* "The occasion determines the question of privilege. The language is only proper to be considered in connection with the question of malice." In that case it was also said: "The jury may find the existence of actual malice from the language of the communication itself, as well as from extrinsic evidence." This statement should be taken subject to the qualification that if, upon the face of the publication, there be no intrinsic evidence whatever of malice, the court may determine this as a matter of law. Townsh. Sland. & Lib. § 288. But the circumstances of the publication in the present case are not such that we are able to say that there is no intrinsic evidence in the circumstances themselves from which a jury might draw an inference of malice. The publication was in a public place, in the presence of others than the officers. Under such circumstances, it is generally held to be a question for the jury whether or not the defendant was actuated by malice. Indeed, the cases cited by defendant's counsel fully support this view. In *Toogood* v. *Spyring*, *supra*, it was said:

"Where, indeed, an opportunity is sought for of making such a charge before third persons which might have been made in private, it would afford a strong evidence of a malicious intention, and thus deprive it of that immunity which the law allows to such a statement when

made with honesty of purpose; but the mere fact of a third person being present does not render the communication absolutely unauthorized, though it may be a circumstance to be left, with others, including the style and character of the language used, to the consideration of the jury, who are to determine whether the defendant has acted *bona fide* in making the charge, or been influenced by malicious motives."

So, in the case of *Brow* v. *Hathaway, supra*, it is said: "If unnecessary publicity be given to the statements, or if they go beyond what is reasonable in imputing crime, these circumstances may tend to show malice in fact." And in *Padmore* v. *Lawrence*, 11 Adol. & E. 380, it was held, under the circumstances of that case, that it should be left to the jury to say whether the charge was made recklessly and unwarrantably, and repeated before more persons than necessary. In Newell, Defam. p. 501, it is said: "Nor should serious accusations be made recklessly or wantonly. They must always be warranted by some circumstances reasonably arousing suspicion, and they should not be made unnecessarily to persons unconcerned, nor before more persons nor in stronger language than necessary." See, also, *Moore* v. *Thompson, supra*, in which *Padmore* v. *Lawrence* is cited with approval.

2. Defendant's counsel further contend that, whatever may be the view of the court as to the ruling directing a verdict for the reasons given by the circuit judge, the judgment should not be disturbed, because the record shows that the action is barred by the statute of limitations. This question was not directly passed upon by the court below. When the plaintiff's counsel was putting in his proof, defendant's counsel objected, for the reason that the case did not appear to come within the statute of limitations. Plaintiff's counsel replied: "I supposed that was a matter of defense;" whereupon defendant's counsel said: "That is very true. I don't know as a matter of defense, but we might as well make it here as anywhere." After some further discussion, the objection was overruled, and plaintiff proceeded with her testimony.

The testimony was clearly enough competent, as the objection only related to the order of proof, and it was quite as logical to offer proof showing reasons why the statute of limitations did not cut off plaintiff's right later in the case as it was at that stage. Plaintiff's counsel stated that he expected to show that the summons was placed in the hands of the officer, and failed of service. Proof of this was not given in the case, but counsel for plaintiff subsequently, on the redirect examination of the witness Pollock, who was a deputy sheriff, and who had a warrant for defendant, and who had stated that he did not arrest him for two years after the warrant was issued, asked why defendant was not sooner arrested, and this, on objection of defendant's counsel, was excluded. It is now stated that the purpose of this inquiry was to show facts which would have taken the case out of the statute of limitations. It also appears by the record that, while plaintiff's counsel had rested his case, defendant had not rested, when the motion to withdraw the case from the consideration of the jury was made; and this motion was made on the single proposition, as it would seem, that the proofs showed that the alleged slanderous matter was privileged, and that no express malice was shown. Had attention been called to the subject of the statute of limitations, the court would, undoubtedly, have permitted the plaintiff to make the necessary proof; and we think that it would be a hardship to now hold that she is precluded from making this proof by a ruling upon another distinct question. A similar question was considered in *Findlay* v. *Railway Co.*, 106 Mich. 700, and we there held that, under circumstances very similar to those disclosed on this record, the plaintiff ought not to be precluded from making his case. See, also, *Ross* v. *Ionia Tp.*, 104 Mich. 320, and *Hoose* v. *Insurance Co.*, 84 Mich. 323. Defendant's counsel rely upon the rule that a correct judgment will not be reversed by this court because the trial judge may have given a wrong or invalid reason for his conclusions, and cite various cases

to sustain this view, among which is *Lentz* v. *Insurance Co.*, 96 Mich. 445. But in that case, as well as in other cases in which the rule contended for has been applied, it will appear that the questions which were permitted to control the case were fairly litigated before the trial court, or were such that a new trial would not remedy the defect.

Judgment will be reversed, and a new trial ordered.

LONG, GRANT, and HOOKER, JJ., concurred. MC-GRATH, C. J., took no part in the decision.