## BREWER *v.* CHASE.

1. LIBEL—REPETITION OF REPORT—JUSTIFICATION.
    Where one publishes that he has heard that another has been
    guilty, of certain disgraceful and criminal conduct, though
    he gives the source of his information, he makes the charge
    his own, and must show in an action of libel, to constitute
    justification, not merely that he has in fact heard the accu-
    sation, but that the charge itself is true.

2. SAME—INSTRUCTIONS.
    Where the publication set out in a declaration for libel de-
    clared that defendant was informed that plaintiff had been
    guilty of certain disgraceful and criminal conduct, it was error
    to instruct the jury that plaintiff could not recover if defend-
    ant had established the truth of the publication "substan-
    tially as it was set forth in the declaration," since the jury
    might infer that it was a sufficient defense to show that
    plaintiff had been accused of the acts charged, without show-
    ing his guilt.

3. SAME.
    Where, in an action for libel, the court has properly in-
    structed the jury that the publication is libelous *per se,* it is
    error to submit a series of requests, covering nearly every
    charge contained in the publication, which permit the jury
    to find that the charges were not libelous.

4. SAME—CROSS-EXAMINATION—RUMORS AND OPINIONS.
    It is error in an action for libel, based on the publication of
    an article charging plaintiff with criminal conduct, to permit
    defendant to show, on cross-examination of plaintiff's wit-
    nesses, that they had heard rumors as to the conduct charged

in the publication, and that, in their opinion, a trial referred to therein showed plaintiff up in a bad light.

5. SAME—RETORT—PRIVILEGE.
- A newspaper article, written in reply to an article in another paper charging one with corruption in office, which contains a series of charges of disgraceful and criminal conduct directed against the author of the previous article, is not privileged; the rule of privileged retort being limited to matters published in rebuttal which are relevant to the charges made or necessary to the defense.

6. SAME—EVIDENCE—PROVOCATION.
In an action for libel based upon an article published in reply to an article charging defendant with corruption in office, the previous publication is admissible as showing provocation.

7. SAME—MITIGATION OF DAMAGES.
That defendant in an action for libel had heard plaintiff charged with the offenses set out in the libelous article may be shown in mitigation of damages, but it is immaterial that persons other than defendant had heard such charges.

Error to Livingston; Smith, J. Submitted June 8, 1899. Decided October 17, 1899.

Case by Thomas W. Brewer against Almon L. Chase for libel. From a judgment for defendant, plaintiff brings error. Reversed.

*B. T. O. Clark* and *Shields & Shields,* for appellant.

*William P. Van Winkle, Louis E. Howlett,* and *Henry C. Smith,* for appellee.

HOOKER, J. The plaintiff is the publisher and proprietor of a newspaper named the Livingston Herald. His action is for libel, based upon an article published in the Livingston Republican at the instigation of the defendant, and over his signature. The defendant filed a plea of the general issue, accompanied by a notice that he would prove the truth of the several charges as made. A verdict of not guilty was returned, and the plaintiff has brought error.

We think the article libelous *per se*, as it charges the plaintiff with having committed several crimes and disgraceful and degrading acts. While the article does not state explicitly that the plaintiff had committed these acts, it says that the author was informed that he had done so, and that witnesses had so testified, and that records showed that the plaintiff had been arrested for crime. The substance of the charge is that the acts were committed, and the author cannot shelter himself by showing that he only said what he had heard. The authorities are harmonious that such statements are merely repetitions of the charge, and none the less so because the statement was that another had made such charge. In Newell, Sland. & L. 350, it is said that:

" Every repetition of a slander originated by a third person is a willful publication of it, rendering the person so repeating it liable to an action. ' Tale-bearers are as bad as tale-makers.' And it is no defense that the speaker did not originate the scandal, but heard it from another, even though it was a current rumor, and he in good faith believed it to be true. Nor is it any defense that the speaker at the time named the person from whom he heard the scandal. A man cannot say, ' There is a story in circulation that A. poisoned his wife,' or 'B. picked C.'s pocket in the omnibus,' or that 'D. has committed adultery,' and relate the story, and, when called upon to answer, say: 'There was such a story in circulation; I but repeated what I heard, and had no design to circulate it or confirm it;' and for two very plain reasons: (1) The repetition of the story must, in the nature of things, give it currency; and (2) the repetition without the expression of disbelief will confirm it. The danger—an obvious one—is that bad men may give currency to slanderous reports, and then find in that currency their own protection from the just consequence of a repetition."

. In a Massachusetts case (*Kenney* v. *McLaughlin*, 5 Gray, 3 [66 Am. Dec. 345]) cited by Newell, the trial court instructed the jury that:

" If the defendant merely said that there was a story in circulation of the kind set forth in the writ, and did not . say so with any purpose or design to extend its circula-

tion, or in any degree to cause the person whom she addressed to believe or suspect the charge which the story imputed to be true, or to add to it any sanction or authority of her own, or to give to it any further circulation or credit, and it was true that such a story was in circulation, it would not be actionable to say so."

The appellate court reversed the judgment, saying:

"The story uttered or repeated by the defendant contains a charge against the plaintiff of a nature to destroy her reputation. * * * It is no answer in any forum to say that she only repeated the story as she heard it. If the story was false and slanderous, she must repeat it at her peril. There is safety in no other rule."

In *McPherson* v. *Daniels*, 10 Barn. & C. 263, it was held that if A. said of X. that he was a thief, and C. publishes that A. said that X. was a thief, in a certain sense C. would publish the truth, but not in a sense that would constitute a defense. C.'s publication would in fact be but a repetition of A.'s words.

In Odgers, Libel & S. 173, it is said:

"This rule that the whole of the libel must be justified to enable the defendant to succeed applies to all cases of reported speeches or repetitions of slander. Thus, if the libel complained of be, 'A. B. said that plaintiff had been guilty of fraud,' etc., it is no avail to plead that A. B. did in fact make that statement on the occasion specified. Each repetition is a fresh defamation, and the defendant, by repeating A. B.'s words, has made them his own, and is legally as liable as if he had invented the story himself. The only plea of justification which will be in answer to the action must not merely allege that A. B. did in fact say so, but must go on to aver, with all necessary particularity, that every word which A. B. is reported to have said is true in substance and in fact. In short, a previous publication by another of the same defamatory words is no justification for their repetition."

We cannot say that the evidence did not warrant this verdict, because we have not all of the testimony before us. An examination of the charge leads us to believe that the jury may have based the verdict on a belief of

the literal truth of the language used in the article sued upon as a full justification. The charge consisted mainly of requests. The following request of the defendant was given:

"I charge you the plaintiff cannot recover if you are satisfied that the defendant has fairly established the truth of the publication sued upon substantially as the publication is set forth in the plaintiff's declaration; that is, as I understand it, the reputation of the alleged libelous article as shown by the paper published."

By this the jury might well conclude that it was unnecessary for the defendant to show that the plaintiff had been guilty of the acts charged, and that it was sufficient to find that he had been accused of them. This would not be proof of the substance of the charge, and would not constitute a justification.

Again, one of the plaintiff's requests was to the effect that the article was libelous *per se*. The court properly gave this. But this was followed by a series of requests, covering nearly every charge contained in the article, of which the following is a sample:

"In considering this article, you should consider the whole together, and if, from all the statements in this article, you do not believe that an ordinary person reading the same would fairly understand that defendant intended to charge that plaintiff had been guilty of burglary, then the plaintiff cannot recover for this charge."

Thus, after telling the jury that the article was libelous *per se*, the court allowed them to find that it was not libelous. As we have said, we consider the article libelous *per se*, and it follows that the jury should not have been permitted to say that it was not. The questions to be submitted to them were: (1) The truth or falsity of the statements; (2) the question of damages.

The record is a long one, and many questions are raised. In view of a possible retrial of the case, we should perhaps refer to some of them. The plaintiff called one Barnes, by whom he proved that the defendant caused the publi-

cation of the article in the newspaper of the witness. He also gave some testimony regarding the circulation of his paper. His entire direct testimony appears upon a single page of the record. Upon cross-examination the defense proved the previous publication of a series of articles in plaintiff's paper, and the opinion of the witness that they led to the publication sued upon, and introduced the articles in evidence. The witness was then permitted to testify at length as to current reports regarding the plaintiff in relation to the charges contained in the article sued upon, viz., that the plaintiff had been arrested for burglary at the expense of the taxpayers, and that he had heard a witness testify in justice's court that plaintiff had committed a forgery, and that he embezzled property, and about the arrest of the plaintiff for trouble with a woman. In short, he was allowed to testify to all sorts of rumors, and to follow it up by stating that, in his opinion, the trial for assault and battery "showed plaintiff up pretty dark." He was also allowed to state that these various reports were published from time to time in his paper, and circulated, and the papers were introduced in evidence. We think it much more orderly for a special defense, like that of truth in an action for libel, to be made by the defense after the plaintiff's case is closed. But, whether it may be gone into on cross-examination or not, it was not competent to enter upon a general inquiry regarding rumors and publications and testimony upon other trials, and the opinion of the witness as to the effect upon plaintiff's character. Again, if the defendant desired to show that he published an article upon information and an honest belief of truth, the natural course would be to show in an orderly way his information, and his reliance upon it, and the rectitude of his intentions, rather than to enter upon a general investigation of plaintiff's history, and the opinion of members of the public regarding it. *Wolff* v. *Smith*, 112 Mich. 360.

The claim is made that the publication was privileged. The libel complained of charged defendant with corruption

in office. To repel that statement, the defendant undertook to show that the plaintiff was an impostor, and really had no interest in the public welfare, by showing his past acts and history, asserting that the only thing of which he could boast was that he had always escaped the vigilance of the law. Proceeding, he said:

1. That the records showed that, many years before, plaintiff had been arrested for burglary, and put the people to much expense.

2. That he was subsequently charged and arrested for burglary from a dwelling.

3. That he had been informed that plaintiff had been arrested for forgery of a note; that he settled (he proved another) the note, and saved himself from state prison.

4. That he sold sewing-machines, and embezzled the property received in payment.

5. That defendant heard a woman swear on the stand that he had insulted a woman.

6. That, while defendant was sheriff, the plaintiff sought to have him arrest a woman for disturbing the peace, but upon investigation he (the defendant) became satisfied that he sought to intimidate the woman to avoid his own arrest; that he was subsequently arrested for assault and battery for committing an assault upon her, and the case disclosed an appalling history of the plaintiff.

7. That his neighbors state that, attracted by the shrieks of his wife, they found him threatening personal violence to her with a hoe.

8. That on another occasion he tore the clothes from her because they were not pleasing to his taste.

9. That afterwards he caused her to be sent to the insane asylum at the public expense; that some persons thought he ought to be made to pay the expense, as they stated that they believed him to be to blame for her condition.

10. That soon afterwards he testified in court that he was worth $500 above debts and liabilities from execution, in direct contradiction to his former affidavit.

It is contended that these statements were privileged, because made in self-defense, upon the theory that they discredit the plaintiff, and show him unworthy of belief. The law justifies a man in repelling a libelous charge by a

denial or an explanation.   He has a qualified privilege to answer the charge; and if he does so in good faith, and what he publishes is fairly an answer, and is published for the purpose of repelling the charge, and not with malice, it is privileged, though it be false.   The court will determine whether the occasion is one which justifies such publication, but the question of good faith—*i. e.*, malice— is for the jury.   It must not be supposed that, when a libelous article is published, the person libeled is at once authorized to publish any and all kinds of charges against the offender, upon the theory that they tend to degrade him, and thereby discredit his libelous statements.   If this were so, every libel might be answered in this way, and the most disgraceful charges made, the person mak- ing them being able to shelter himself behind his belief in their truth.   The thing published must be something in the nature of an answer, like an explanation or denial. What is said must have some connection with the charge that is sought to be repelled.   The claim is made that anything which tends to induce a disbelief of the charge is privileged.   In support of this proposition, defendant's brief quotes the following:

"In some cases, so we have seen, the plaintiff's conduct towards the defendant may be a bar to the action.   If the plaintiff has attacked the defendant in the newspaper, and the defendant replies without undue personality, and without wandering into extraneous matters, then such reply, if made honestly in self-defense, is privileged." Odgers, Libel & S. 306.

"Every man has a right to defend his character against false aspersion.   It may be said that this is one of the duties which he owes to himself and to his family.   There- fore communications made in fair self-defense are priv- ileged.   If I am attacked in a newspaper, I may write to that paper to rebut the charges, and I may at the same time retort upon my assailant, where such retort is a necessary part of my defense, or fairly arises out of the charges he has made against me." Id. 228.

In this it is observable that the rule limits the privilege to retorts which are "*necessary to the defense, or fairly*

*arise out of the charges made.*" But the language should be viewed in the light of the cases upon which it rests. The first authority given by the author is *Senior* v. *Medland*, 4 Jur. (N. S.) 1039. At an election of vestrymen, the plaintiff accused the defendant of neglecting his official duties, who retorted that the plaintiff had been bribed by a railway company. The court held that it was not privileged, for it was not made in self-defense; yet, if true, it would tend to discredit him. In *Huntley* v. *Ward*, 6 C. B. (N. S.) 514, the plaintiff caused his attorney to write to the defendant a letter demanding payment of an alleged debt. The defendant replied by a letter containing aspersions on plaintiff's character. It was claimed to be privileged. The court held otherwise. Willes, J., said:

"There are, however, certain excepted cases where a communication is privileged, though *prima facie* libelous. But these are cases where the matter is written in the assertion of some legal or moral duty, or in self-defense, and the thing is done honestly, and without sinister motive, and in the *bona fide* belief in the truth of the statement at the time of making it. In such cases, no matter how harsh, hasty, untrue, or libelous the publication would be but for the circumstances, the law declares it privileged, because the amount of public inconvenience from the restriction of freedom of speech or writing would far outbalance that arising from the infliction of a private injury. Therefore, upon principles of public policy, such communications are protected. The question is whether the letter in the present case falls within that category. It appears to me that the principle does not apply. There was no legal or moral duty to be discharged by writing a letter to the plaintiff's attorney heaping abuse upon his client. It was not written either in assertion of or defense against any claim, and therefore does not fall either within the principle or within any of the decided cases. As to the authorities which have been cited, one of course at once assents to the doctrine that, if the communication would be privileged provided the statement were made honestly and *bona fide*, there must be some evidence of sinister motive or untruth to turn the scale, and to take the case out of the privileged class. If that were not so,

the privilege would be all but useless. But, to entitle him to the benefit of the rule, it is necessary that the defendant should make out that the circumstances of the publication were such as to bring the case within it. I think in this case the defendant has failed to do that, and therefore there is no ground for disturbing the verdict."

In *Dwyer* v. *Esmonde*, 2 L. R. Ir. 243, it was held that a publication was privileged when it was an answer to charges, and *necessarily* libeled the plaintiff.

In Newell, Sland. & L. (page 519, § 120), the author says:

"Every man has a right to defend his character against false aspersion. It is one of the duties which he owes to himself and to his family. Therefore communications made in fair self-defense are privileged. If a person is attacked in a newspaper, he may write to the paper to rebut the charges, and may at the same time retort upon his assailant, *where such retort is a necessary* part of his defense, or fairly arises out of *the charges he has made. A man who commences a newspaper war cannot subsequently come to the court as plaintiff to complain that he has had the worst of the fray. But in rebutting an accusation the party should not state what he knows at the time to be untrue, or intrude unnecessarily into the private life or character of his assailant. The privilege extends only to such retorts as are fairly an answer to the attacks."

In *Chaffin* v. *Lynch*, 83 Va. 117, the court said:

"Therefore, if a communication goes beyond the occasion, and language is used which unnecessarily defames the plaintiff, such language is not considered as having been used in the due performance of a duty, or in the protection of the defendant's interest, and is not privileged. And the same rule applies where the publication is more extensive than the circumstances of the case reasonably require."

In *O'Donoghue* v. *Hussey*, Ir. R. 5 C. L. 124, it was held that it was a reasonable mode of defense for a person whose character and conduct had been assailed in a public newspaper to state publicly that his assailant was known to be a person in the habit of making misstatements. But

in the case of *King* v. *Staples*, Andrews, 228, one Thomson had said that Staples had asked his (Thomson's) pardon for saying that he (Thomson) was married to one Mrs. W. Staples retorted that Thomson was ".scandalously guilty of telling a lye in divers companies." The court held that, while a denial would have been privileged, the words used were not, saying that "nothing tends more to breach of the peace and to bloodshed than the word (lye), as nothing else can be answered to it;" and the defendant was held criminally liable. But the case of *O'Donoghue* v. *Hussey* is noticeable for another reason, as it may be inferable from it that any *retort* is necessarily privileged, and must go to the jury upon the question of malice. The language used is as follows:

"It occurs to us that these cases establish this proposition: That if a party choose to have recourse to a public newspaper, and publish statements reflecting on the conduct or character of another, the aggrieved party may have recourse to the public press for his defense and vindication; and in so doing, if he reflects on the conduct or character of his assailant, it will be for the jury to say whether he did so honestly in self-defense, or was actuated by malice towards the party who originally assailed him."

It is at least doubtful if such an implication was intended, but, if that should be admitted, the case would stand alone. That case was reviewed in the case of *Murphy* v. *Halpin*, (1874) Ir. R. 8 C. L. 132, by Fitzgerald, B., who participated in the former case, from which it appears that his understanding was that the court did determine the relevancy and connection of the alleged libels. In the *Murphy Case* the court passed on that question, and decided that the retort was not privileged.

The overwhelming weight of authority supports the doctrine that the court decides whether the writing is one within a qualified privilege. See *Brown* v. *Croome*, 2 Starkie, 297; *Gassett* v. *Gilbert*, 6 Gray, 97, 99; *Chaffin* v. *Lynch*, 84 Va. 884; *Easley* v. *Moss*, 9 Ala. 266; *Smith* v. *Smith*, 73 Mich. 445 (3 L. R. A. 52, 16 Am.

St. Rep. 594); 13 Am. & Eng. Enc. Law, 422.   Our own case of *Myers* v. *Kaichen*, 75 Mich. 272, impliedly recognizes the doctrine.   In *Bacon* v. *Railroad Co.*, 66 Mich. 175, this subject is discussed, and the language of Baron Parke in *Toogood* v. *Spyring*, 1 Cromp., M. & R. 193, approved; *i. e.*:

"That if such communications are fairly warranted by any reasonable occasion or exigency, and honestly made, such communications are protected for the common convenience and welfare of society; and the law has not restricted the right to make them within any narrow limits."

See, also, *Pollasky* v. *Minchener*, 81 Mich. 283 (9 L. R. A. 102, 21 Am. St. Rep. 516); *Garn* v. *Lockard*, 108 Mich. 198; *Harrison* v. *Howe*, 109 Mich. 480.

In the case of *Smith* v. *Smith, supra*, the occasion was, in a sense, one where the defendant was privileged to publish his wife, and the publication was relevant to the subject, though excessive; and it was held not error against the defendant to submit the question to the jury. It does not follow that an irrelevant charge must be submitted to a jury to determine whether it is excessive, for such cannot be privileged under any circumstances.

In *Smith* v. *Youmans*, 3 Hill, (S. C.) 85, the court said:

"In general, however, where it appears on the plaintiff's showing, or on evidence produced by the defendant, that the publication was made on such an occasion or under such circumstances as have been specified, and that the words were spoken *bona fide* in the discharge of some legal or moral duty, rendered necessary by the exigencies of society, the occasion affords a *prima facie* presumption to rebut the inference of malice, and the plaintiff would fail without further proof.   See Starkie, Ev. 4, p. 863, and the cases there cited."

See *Hart* v. *Reed*, 1 B. Mon. 166 (35 Am. Dec. 179); *Gray* v. *Pentland*, 4 Serg. & R. 424; *Flitcraft* v. *Jenks*, 3 Whart. 161.

In *Dwyer* v. *Esmonde*, Ir. R. 11 C. L. 542, it was said:

"Yet affirmative allegations of misconduct of the party who has libeled another, made in reply, if unconnected with the conduct charged in the first publication, and not mere matter of excess, are not privileged."

A unique case upon this subject is *Pasquin's Case*, unreported, except as referred to in *Tabart* v. *Tipper*, 1 Camp. 351. In that case it is said that, when it appeared that the plaintiff's own publications were libelous and scandalous, Lord Kenyon threw his manuscript at the plaintiff's head, and dismissed him from the court with infamy.

The case that goes the furthest towards supporting the defendant's claim is *Goldberg* v. *Dobberton*, 46 La. Ann. 1303 (28 L. R. A. 721). In the syllabus it is said:

"The interchange of opprobrious epithets and mutual vituperation and abuse will justify a judge in approving a verdict for the defendant, although the slanderous words were proved; and a verdict rendered in such a case will not be disturbed by the supreme court."

Copious notes upon this subject will be found in 28 L. R. A. 721, from which it will be seen that the Louisiana case is exceptional. Numerous authorities are cited which are not repeated here.

The charges to which we have called attention have no connection with the charge of corruption in office, previously made by the plaintiff. The only claim made for these is that they discredit him. We have called attention to one case where it was held that a retort that the libelant was known to be in the habit of making misstatements was privileged, but that is a different matter from asking the public to infer that the charge contained in the libel was untrue because some one had accused the libelant of some misconduct which had no connection with the alleged libel; as that he had cheated some one in a horse trade, or had committed assault and battery upon one, or had been accused of some criminal act, or was a man of low character and bad habits. It seems to us manifest that very little, if any, of this alleged libel, was relevant

to the charge which called it forth, and therefore that it was not, as a whole, privileged. It does not follow that the previous articles published by the plaintiff were not admissible in mitigation as showing provocation.

Another subject should be referred to in this connection. Much testimony was admitted tending to show that the plaintiff had been charged with the offenses described in the alleged libel. It was competent to show in mitigation of damages that the defendant had heard that such charges had been made, but it was unimportant whether other persons had heard them or not. The case of *Wolff* v. *Smith*, 112 Mich. 360, is in point. It was insisted that it was competent to show that the statements contained in the libel were literally true, whether the charges which they reflected were true or not. We have already shown that it was necessary to prove the truth of the latter to make out a justification. Nothing less would do. It was incompetent to prove the former, because, not being privileged, they could not amount to a defense, and, had they been privileged, they *would* have amounted to a defense, though false, unless stated maliciously. Whether stated maliciously or not would not depend upon the truth of the charges of arrest, etc., but upon defendant's information and belief upon such subjects. Proof that the gist of the charges was true would tend to show belief as well as justification. Proof that others had heard rumors or statements tended to prove neither that the defendant had heard them nor that he believed them.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.