FLYNN *v.* BOGLARSKY.

1. LIBEL AND SLANDER—JUDICIAL PROCEEDINGS—JUSTICES OF THE PEACE—PLEADING—PRIVILEGE.

Pertinent statements contained in a petition addressed to an examining magistrate, charged with the duty of investigating the acts complained of, are privileged.

2. SAME.

And a petition charging plaintiff and his wife with disorderly conduct and with disturbing the peace of defendants' neighborhood, presents matter cognizable by a justice of the peace.

3. SAME—PRIVILEGE—PUBLICATION.

But the privileged character of the writing may be lost by excessive publication, or by general circulation among the people of a community.

4. SAME.

Privilege does not extend to false publications made to persons who have no interest in the subject-matter.

5. SAME.

A petition to be presented to the justice, charging plaintiff and his wife with disorderly conduct, and with being disturbers of the peace and a nuisance to the neighborhood, was of a libelous nature, since it tended to hold plaintiff up to contempt and ridicule of the community.

6. SAME—COURTS—PETITION.

It should have been left to the jury to determine whether or not defendants gave to the paper unnecessary notoriety by its circulation about the neighborhood and publication in the daily press, and also whether or not the defendants were acting maliciously.

Error to Wayne; Donovan, J. Submitted January 6, 1911. (Docket No. 34.) Decided February 1, 1911.

Case by William Flynn against George Boglarsky, Bruno Marschall, Adam Moeller, Joseph Reck, John P. Vollrath, and John C. Hacker, for libel. A judgment for defendants on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

164 MICH.—33.

*Philip A. McHugh* and *William Henry Gallagher*, for appellant.

*James H. Pound*, for appellees.

STONE, J. The plaintiff brought suit in the Wayne circuit court against George Boglarsky, Joseph Reck, John P. Vollrath, and others for publishing an alleged libel, consisting of a petition addressed to the judge of the police court of the city of Detroit, the petition being in the following words and figures:

"DETROIT, Nov. 2, 1907.
" To the Honorable Judge of the Police Court:
" We, the undersigned, do hereby request that Mr. and Mrs. Wm. Flynn, now residing at 241 Russell street, upstairs, be requested to move from said premises, and vacate entirely the immediate neighborhood of 241 Russell street, insomuch as making their residence there. The grounds for our petition is due to the obnoxious manner the said parties conduct themselves in the forced relations with their immediate neighbors, as disturbers of the peace, quarrelsome, and a general nuisance to the peaceful citizens about them. We sincerely pray, your honor, that you grant our petition, which we assure you is from no personal prejudices, and herewith affix our signatures.
" Mr. and Mrs. George Boglarsky, 241 Russell St.
" Mr. and Mrs. J. C. Hacker, 243 Russell St.
" Fred Foss, 252 Russell St.
" B. Marschall, 257 Russell St.
" A. Moeller, 245 Russell St.
" Jos. Reck, 237 Russell St.
" Mrs. Becker, 232 Russell St.
" Mr. and Mrs. J. P. Vollrath, 121 Sherman St.
" Dr. and Mrs. H. C. Beck, 119 Sherman St.
" Mrs. Ponkey, 248 Russell St.
" Mrs. Weber, 125 Sherman St."

The case was tried before a jury. The testimony of the defendant George Boglarsky (called as a witness on behalf of the plaintiff) showed that the petition was signed by defendants Boglarsky and Joseph Reck, and was delivered to the defendant Vollrath without his signature, and returned by him bearing his signature, and that the

signatures of some of the other defendants were affixed by members of their families. He further testified that he had been annoyed and disturbed in the peace of his home by the plaintiff and the plaintiff's wife; that he visited Police Justice Stein and told his story; that the police justice told him to present a petition signed by the residents in that locality; that accordingly he caused the petition set forth above to be prepared by a law student, then signed it himself, and caused it to be signed with the names of the other persons appearing upon it; and that after securing said signatures it was presented by him to Police Justice Stein. The testimony of Police Justice Stein was to the effect that he had been visited by the defendant George Boglarsky with reference to his troubles with the Flynns, but that he had not directed the preparation and presentation of the petition above set forth, or of any other petition of like character, and that such paper was of no force and effect, and served no purpose in the court over which he presided. The plaintiff testified to the publication of the said petition in the daily press, to the falsity of the matters therein contained, and to the notoriety, annoyance, inconvenience, and damage resulting to him, and thereupon rested his case.

The defendants thereupon moved the court to direct a verdict of no cause of action, upon the ground that the petition was an absolutely privileged communication, and the presenting of it to the police justice afforded no basis for the plaintiff's case, which motion was allowed by the court, and a verdict of no cause of action was directed. The case is here upon writ of error. Error is assigned by plaintiff upon direction of the verdict as to defendants George Boglarsky, John P. Vollrath, and Joseph Reck.

For the purposes of this case, the plaintiff is entitled to the most favorable aspect of the evidence, and to have the fact testified to by the witness Justice Stein that he did not direct the preparation of the petition in question accepted as true; and, further, that the petition was communicated and circulated among the different defendants

and signers, and by the defendants exhibited to persons not parties to this suit. Did the circuit judge err in holding that the said petition was an absolutely privileged communication? And this involves the question whether it was made in the due course of a legal proceeding. It is the contention of the appellant that this case does not involve the question of liability for, or of the materiality of, libelous matter in pleadings, for the reason that the paper, or document, in which the alleged libel occurs, was not contained in, and did not appear in, any complaint, pleading, affidavit, or legal document required or properly filed in any civil or criminal proceeding, or suit in any court of this State. It is urged that it is not such a paper or pleading as has any place in the files of the court to whose presiding officer it was addressed; that it is not such a paper or pleading as that officer could consider or act upon; that it was never filed in the court, and therefore cannot assume to itself the character of a document the contents of which cannot be charged to be libelous, because of its being absolutely privileged.

We think that this is too narrow a view to take of this matter in so far as presenting the paper to the police justice was concerned. We are aware that there are authorities which hold that extrajudicial process, though before a magistrate, may be libelous, and counsel have cited us to authorities supporting this view. The main case, however, cited by counsel, that of *Miller* v. *Nuckolls*, 77 Ark. 64 (91 S. W. 759, 4 L. R. A. [N. S.] 149, 113 Am. St. Rep. 122), is a case where the defendant addressed a letter to a police magistrate communicating certain rumors that he had heard concerning the plaintiff, and the letter was held to be a communication that was qualifiedly privileged only. But this paper is not of that character. It charges positive misconduct on the part of the plaintiff and his wife, and states that they are disturbers of the peace, are quarrelsome and disorderly, and a general nuisance to the peaceable citizens about them. The matter stated in this petition was clearly pertinent

and material to the subject of the investigation desired.
If true, the plaintiff and his wife were very undesirable
residents of the neighborhood. The magistrate had juris-
diction over such matters. We are not disposed to nar-
row or abridge the right of a citizen to make even an oral
complaint before a magistrate charged with the duty of
investigating the matters complained of. An efficient ad-
ministration of justice requires that considerable latitude
must be given to parties in laying their complaints and
grievances before such magistrate. Such a course tends
to the peaceable adjustment of difficulties and the quiet
of the neighborhood. The matters charged seemed to be
pertinent, material, and positive, and we think that the
statements, verbal or written, under such circumstances,
must be held to be absolutely privileged in so far as the
proceeding before a magistrate is concerned. *Hart* v.
*Baxter,* 47 Mich. 198 (10 N. W. 198); *Graham* v. *Cass
Circuit Judge,* 108 Mich. 425 (66 N. W. 348); *Shingle-
meyer* v. *Wright,* 124 Mich. 230 (82 N. W. 887, 50 L. R.
A. 129); 25 Cyc. pp. 375 *et seq.,* 384. Such communica-
tions are made in the strictest confidence, and are as
sacred in the eyes of the law as the communications be-
tween client and lawyer, or patient and physician.

Another and different question, however, is presented
when we come to consider the conduct of the defendants
Boglarsky, Vollrath, and Joseph Reck in so far as noto-
riety and publicity were given to this paper by its circula-
tion around the neighborhood and its publication in the
daily press, and the intercommunication and exhibition
thereof, complained of. This petition may have been ab-
solutely privileged in so far as presenting it to the magis-
trate was concerned, and yet it may not have that charac-
ter at all when considered in connection with its general
circulation and publication among other people, and in
the community generally. The privileged character of
the instrument may be lost where the extent of the pub-
lication is excessive. This doctrine has been recognized
by our own courts, as appears from the following cases:

*Smith* v. *Smith*, 73 Mich. 445 (41 N. W. 499, 3 L. R. A. 52, 16 Am. St. Rep. 594); *Pollasky* v. *Minchener*, 81 Mich. 280 (46 N. W. 5, 9 L. R. A. 102, 21 Am. St. Rep. 516). The occasion often determines the question of privilege. Privilege does not extend to false publications, made to persons who have no interest in the subject-matter. *Garn* v. *Lockard*, 108 Mich. 196–199 (65 N. W. 764); *Brewer* v. *Chase*, 121 Mich. 526 (80 N. W. 575, 46 L. R. A. 397, 80 Am. St. Rep. 527); *Clemmons* v. *Danforth*, 67 Vt. 617 (32 Atl. 626, 48 Am. St. Rep. 836). That the article, stripped of its privileged character, contained libelous matter, there can be no doubt. It tended to degrade the plaintiff, and to hold him up to the contempt, if not the ridicule, of the community. We are of opinion, therefore, that this branch of the case should not have been overlooked by the circuit judge, and that it presented a question for the consideration of the jury. Even if considered as to the public generally, or in connection with the persons to whom the document was exhibited, the instrument was only conditionally privileged, or qualifiedly privileged. The question of malice would have been a proper question to submit to the jury. *Smith* v. *Smith, supra; Howard* v. *Dickie,* 120 Mich. 238–240 (79 N. W. 191); *Garn* v. *Lockard, supra.*

For the error pointed out, the judgment of the circuit court is reversed, and a new trial granted.

OSTRANDER, C. J., and BIRD, HOOKER, and BLAIR, JJ., concurred.