# STATE OF MICHIGAN

# COURT OF APPEALS

MARK ANTHONY EDDINGTON,

       Plaintiff-Appellant,

v

RAYMOND TORREZ AND ADMIRAL
PETROLEUM COMPANY,

       Defendant-Appellee.

FOR PUBLICATION
June 23, 2015
9:00 a.m.

No.  320882
Saginaw Circuit Court
LC No.  13-021022-CZ

Before:  RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

PER CURIAM.

In this defamation per se case, plaintiff appeals by right the trial court's grant of summary disposition in favor of defendants pursuant to MCR 2.116(C)(8).  Plaintiff alleged that defendant Raymond Torrez, allegedly an "agent" of defendant Admiral Petroleum Company, falsely reported to police that plaintiff had stolen gasoline from a gasoline station on four occasions. Plaintiff alleges that the reports were made with knowledge that they were untrue or with reckless disregard for the truth.  No factual development took place; summary disposition was granted on the grounds that the statements were subject to an absolute privilege and could not be the basis of a defamation claim.  We affirm.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012).  A motion brought under MCR 2.116(C)(8) should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the non-moving party.  *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).  The applicability of a privilege is a question of law, which is also reviewed de novo. *Oesterle v Wallace*, 272 Mich App 260, 263; 725 NW2d 470 (2006).

A claim of defamation requires proof of the following elements:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [*Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005).]

-1-

At issue in the present case is the second element, specifically whether statements made to police regarding criminal activity are absolutely privileged and therefore immune from suit for defamation.

The privilege asserted here had its genesis in *Shinglemeyer v Wright*, 124 Mich 230; 82 NW 887 (1900). In that case, the defendant's bicycle was stolen, and he reported to the police that he believed the plaintiff had stolen it and was in addition of unsavory character; on that basis, the plaintiff was arrested but subsequently released when it was established that she had not in fact stolen the bicycle. *Id*. at 231-238. The plaintiff commenced suit against the defendant for, in relevant part, slander, premised on defendant's statement to the police officer. *Id*. at 231. Our Supreme Court held that the trial court should not have admitted the defendant's statements to the police because:

> These were privileged communications. They were introduced and admitted or the purpose of showing malice. The trial judge was in doubt as to their competency, but finally admitted them. Privileged communications cannot be used for that purpose. Defendant's property was stolen, and it was not only his privilege and right, but his duty, to give to the detectives, who, in this case, were specially appointed for the purpose, all information he had, and, if he had suspicions of any person, to state who the person was, and the reasons for suspecting him. Such communications are made in the strictest confidence, and are as sacred, in the eye of the law, as the communications between client and lawyer, or patient and physician. To be evidence of malice, these communications must in themselves have been malicious, and would, therefore, form the basis themselves for an action for slander. If this be the law, no person would be safe from prosecution in communicating to police officers, whose duty it is to examine into the case and hunt for the criminal, his suspicions, or statements which might tend to implicate a person. Public policy forbids the adoption of such a rule. These detectives were under legal, as well as moral, obligations to keep these communications secret. They were not made for publication, and the officers had no right to divulge them to others. It is very doubtful if these detectives could be compelled to disclose in court such privileged communications. Such officers, especially in large cities, are entitled to know from the citizen against whom a crime has been committed all his suspicions and knowledge, both in regard to the person suspected, and also in regard to his character and habits. The defendant did not make these statements for repetition. He made them for the exclusive use and benefit of the trusted and sworn officers of the law. They should have been forever locked in their breasts, and never disclosed; otherwise, few persons would dare to disclose to an officer the name of a suspect, or anything they had learned about his character. [*Shinglemeyer*, 124 Mich at 239-240.]

Consequently, persons who make statements to police in the pursuit of reporting crimes in the context of a defamation claim or assisting the police in investigating crimes enjoy a privilege in those statements against the police divulging them for any purpose other than law enforcement.

Plaintiff disputes the continued validity of any such absolute privilege. *Shinglemeyer* has never been overruled. Furthermore, our Supreme Court repeatedly cited it for this exact proposition: that reports of crimes or of information about crimes to police is absolutely privileged. *People v Pratt*, 133 Mich 125, 133-135; 94 NW 752 (1903); *Flynn v Boglarsky*, 164 Mich 513, 517; 129 NW 674 (1911); *Wells v Toogood*, 165 Mich 677, 679-680; 131 NW 124 (1911); *Powers v Vaughan*, 312 Mich 297, 305-306; 20 NW2d 196 (1945); *Simpson v Burton*, 328 Mich 557, 562-563; 44 NW2d 178 (1950). In the latter case, our Supreme Court even emphasized that the privilege attached even if the reporting party made the report maliciously. *Simpson*, 328 Mich at 562.

Furthermore, the important principles underlying the decision in *Shinglemeyer* remain just as valid today as they were at the turn of the last century: we could not reliably have practical law enforcement if victims of crimes, or those with knowledge of crimes, were forced to risk a lawsuit upon reporting what they know or what they suffered. The law is not blind to the fact that such reports are occasionally maliciously fictitious: it is a crime to lie to a police officer about an ongoing investigation, MCL 750.479c, or to make an intentionally false report to the police. MCL 750.411a. As noted, the *Shinglemeyer* privilege would not insulate a report against an investigation or charge for such crimes. Consequently, false reports may not be made with impunity. We further disagree with plaintiff's contention that any meaningful difference exists between statements made to police that commence an investigation, as opposed to statements to police during an ongoing investigation.

The simple fact is that *Shinglemeyer* created an absolute privilege covering any report of criminal activity to law enforcement personnel in the context of a defamation claim, and *Shinglemeyer* remains the law. Plaintiff's reliance on unpublished opinions of this Court is misplaced; such opinions may be of persuasive interest but have no binding authority, and even if they did, the Court of Appeals has no authority to overturn precedent from our Supreme Court. The fact that this Court in *Hall v Pizza Hut of America, Inc*, 153 Mich App 609, 619-620; 396 NW2d 809 (1986), raised the *hypothetical* possibility that there would remain a qualified privilege *if* no absolute privilege exists has no bearing on the actual law. Plaintiff's reliance on Supreme Court cases that do not discuss the privilege at issue likewise have no bearing. If the privilege set forth in *Shinglemeyer* is to be abrogated in any way, our Legislature could enact a statute on point, or our Supreme Court could articulate such an abrogation. We have been unable to discover any indication that either has occurred. Accordingly, the trial court correctly denied plaintiff's motion for reconsideration, and we decline to address that issue any further.

Affirmed.

/s/ Amy Ronayne Krause
/s/ William B. Murphy
/s/ Deborah A. Servitto

-3-