*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOAN M. BROVINS and THOMAS H. OEHMKE,

Plaintiffs-Appellants,

v

PATRICK CANTWELL GUINAN, also known as
GUINAN, SR., and PATRICK ANDREW GUINAN,
also known as GUINAN, JR.,

Defendants-Appellees.

UNPUBLISHED
April 22, 2021

No. 349861
Leelanau Circuit Court
LC No. 2018-010099-NO

Before: MURRAY, C.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Plaintiffs, Joan M. Brovins and Thomas H. Oehmke, appeal as of right an order granting summary disposition to defendants, Patrick Cantwell Guinan, also known as Guinan, Sr., and Patrick Andrew Guinan, also known as Guinan, Jr., under MCR 2.116(C)(10). We affirm.

Plaintiffs are husband and wife who reside at Oehmke's Florida home part of the year and at Brovins's Northport, Michigan home the other part of the year. Guinan, Sr., lives in Florida part of the time and also owns a home near Brovins's Michigan home; both Michigan homes are located in the same Northport neighborhood. Guinan, Jr., is Guinan, Sr.'s adult son. Guinan, Jr., primarily resides out of the state, but sometimes visits his father in Michigan.

In September 2016, Guinan, Jr., was walking along East Camp Haven Road with his miniature pinscher, which was on a leash, when he came across plaintiffs. Brovins asked if she could pet the dog. Plaintiffs allege that the dog snarled and snapped at them. Plaintiffs allege that, over a year later, in September 2017, while plaintiffs and Guinan, Jr., were again out walking and crossed paths, the dog snarled and snapped at plaintiffs again. Neither plaintiff was ever bitten by the dog. A couple of weeks later, in October 2017, Oehmke encountered Guinan, Jr., and the dog on the road once again, and Oehmke claimed that Guinan, Jr., made a threatening statement to him. These were the only alleged incidents of physical proximity between plaintiffs and Guinan, Jr., that were set forth in the operative complaint, although plaintiffs also claimed that Guinan, Jr., at one point, walked near Brovins's driveway with the dog and a baseball bat, outside

-1-

of plaintiffs' presence. Plaintiffs also complained about three other incidents—a green pickup truck in Brovins's driveway, discarded food containers found in their trash bin, and an unlatching of Brovins's gate on her deck—but plaintiffs only speculated that Guinan, Jr., was involved with these incidents.

Plaintiffs obtained ex parte personal protection orders (PPOs) against Guinan, Jr., on October 9, 2017, and in March 2018 they filed a lawsuit, raising various theories against Guinan, Jr., and Guinan, Sr. It is not disputed that in October 2018, Guinan, Jr., used the Internet to provide a tip to the Federal Bureau of Investigation (FBI). He claimed that Oehmke was likely to be the person who used pipe bombs to target critics of Donald Trump during the 2018 national midterm elections. The court, thereafter, allowed plaintiffs to amend their complaint to add a count of defamation. The court eventually granted summary disposition to defendants.[1] Plaintiffs take issue with this ruling and with various interim rulings by the court.

## I. NUISANCE

Plaintiffs contend that the trial court erred by finding no genuine issue of material fact regarding whether Guinan, Sr., maintained a private nuisance by allowing Guinan, Jr., to stay, at times, at Guinan, Sr.'s Michigan home. They contend that Guinan, Jr., stalked plaintiffs from the home and was thereby a nuisance. We disagree.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Spohn v Van Dyke Pub Schs*, 296 Mich App 470, 479; 822 NW2d 239 (2012).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999) (citations omitted).]

As stated in *Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 431-432; 770 NW2d 105 (2009):

> The elements of a private nuisance are satisfied if (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. To prove a nuisance, significant

---

[1] The court allowed one count of the complaint to remain, but plaintiffs stipulated to its dismissal in order to facilitate this appeal.

harm to the plaintiff resulting from the defendant's unreasonable interference with the use or enjoyment of property must be proven. [Citations omitted.]

Plaintiffs allege that eight incidents, viewed together, created a question of fact regarding whether Guinan, Sr., maintained a private nuisance: the first three incidents along the road, the alleged baseball bat incident, the pickup truck incident, the alleged depositing of garbage, the alleged unlatching of Brovins's gate, and the Internet FBI tip.[2] As for the pickup truck incident, during which a green pickup truck allegedly entered Brovins's driveway, Oehmke admitted that he could not see who was driving the truck. Even the operative complaint itself states that "no positive [identification] of the driver could be made." Oehmke also admitted that he did not know if Guinan, Jr., had unlatched the gate on Brovins's deck; instead he was conjecturing that Guinan, Jr., had done so. And it was also not demonstrated who had deposited the food containers in plaintiffs' trash can. "A party opposing a motion for summary disposition must present more than conjecture and speculation to meet its burden of providing evidentiary proof establishing a genuine issue of material fact." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 192-193; 540 NW2d 297 (1995).

Plaintiffs' reference to the Internet tip is similarly not supportive of their nuisance claim. There is no evidence that this tip resulted from Guinan, Sr.'s harboring of Guinan, Jr., in his Michigan home, and the tip clearly involved no invasion by Guinan, Sr., or Guinan, Jr., into plaintiffs' property interests.

This leaves the first three incidents and the incident during which Guinan, Jr., and the dog were, allegedly, at the end of Brovins's driveway with a baseball bat. Viewing the evidence in the light most favorable to plaintiffs, a miniature-sized dog snapped at them, and, over a year later, snapped at them again, while they were walking on a public road. Guinan, Jr., restrained the dog by taking it away, using a leash, during both incidents. Later, again accepting plaintiffs' version of events, Oehmke told Guinan, Jr., to hang onto the dog, and Guinan, Jr., responded by making a threatening comment to Oehmke, while simultaneously attempting to film the interaction and claiming that he would post the video on YouTube. Oehmke admitted that the first three incidents took place on a public road. As for the baseball bat incident, even disregarding any hearsay issues,[3] Guinan, Jr., was simply walking his dog, alone and out of the presence of plaintiffs, during this incident, and no "nefarious" behavior was observed.[4] Even if one disregards whether Guinan, Sr., could be held responsible for the intentional actions of a third party, plaintiffs failed to establish a

---

[2] There may have been two similarly worded tips sent around the same time. However, the third amended complaint (i.e., the operative complaint) refers to one tip. We employ the singular term "tip."

[3] Oehmke admitted that the evidence of this incident was derived from the statement of a police officer.

[4] Guinan, Jr., stated that he was carrying a bat because he liked to hit stray golf balls down the road.

genuine issue of material fact regarding an interference with any "property rights" in the public road. *Capitol Props Group*, 283 Mich App at 431.

In addition, there is no evidence that Guinan, Sr., intentionally caused any harm to plaintiffs, was reckless, or acted in an ultrahazardous manner, and nor was there evidence of negligence on the part of Guinan, Sr. *Id*. at 432. Indeed, the facts of this case do not establish any duty that Guinan, Sr., owed to plaintiffs. *Kass v Tri-Co Security, Inc*, 233 Mich App 661, 664, 667-668, 670; 593 NW2d 578 (1999) (discussing negligence, and its included concept of duty, in the context of a failure to protect someone from a third party's criminal acts). The trial court properly granted Guinan, Sr., summary disposition on the claim of nuisance.

## II. AMENDMENT OF COMPLAINT

Plaintiffs contend that the trial court abused its discretion by disallowing their proposed amendment of the complaint to add a count of aggravated stalking. We disagree.

"A trial court's decision on a motion to amend a complaint is reviewed for an abuse of discretion." *Long v Liquor Control Comm*, 322 Mich App 60, 67; 910 NW2d 674 (2017). "A trial court abuses its discretion when its decision is outside the range of principled outcomes." *Grayling v Berry*, 329 Mich App 133, 151; 942 NW2d 63 (2019).

As stated in *Hakari v Ski Brule, Inc*, 230 Mich App 352, 355; 584 NW2d 345 (1998):

> A trial court should freely grant leave to amend pleadings if justice so requires. However, leave to amend a complaint may be denied for particularized reasons, such as *undue delay*, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile. [Citations omitted; emphasis added.]

At the motion hearing for the proposed amendment, Oehmke stated that he had not alleged aggravated stalking in the original complaint because he had been unaware of the pertinent statute. He stated:

> *It's really adding no new facts*, it's simply acknowledging that under the statute there is a cause of action for stalking and therefore we don't have to rely on some perhaps more vague common law tort of intentional infliction of mental distress or trespass or other more common law type torts. [Emphasis added.]

Oehmke admitted that the PPOs "are a necessary element to establish aggravated stalking."[5] Oehmke went on to state that "the FBI . . . false report does not play into aggravated stalking, that's

---

[5] MCL 750.411i(2) states:

> An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances:

not, how shall I say, it's not behavior prohibited under the statutory tort." From these admissions and this information, it is apparent that the actions plaintiffs were putting forth in support of the proposed amendment (adding a count of "aggravated stalking") were (1) actions already alleged in the existing complaint, (2) actions other than the FBI tip, and (3) actions occurring after service of the PPO.[6] In their motion to amend, they stated that aggravated stalking took place because at least one act by Guinan, Jr., was in violation of a PPO. But the only actions listed in the complaint that occurred after service of the PPO were the alleged depositing of food containers in plaintiffs' trash can and the alleged unlocking of Brovins's gate.[7] Plaintiffs filed the motion to add the count of aggravated stalking in March 2019, despite the fact that the alleged depositing of food containers in the trash can and the alleged unlocking of the gate occurred in October 2017. As such, the court acted well within its discretion by concluding that there had been undue delay on plaintiffs' part, *id*. at 355, in seeking the amendment, given that almost 1 ½ years had passed between the operative events and when plaintiffs sought the amendment. Because the trial court did not abuse its discretion, plaintiffs' remaining argument concerning allowing the PPOs into evidence is moot.

## III. OTHER-ACTS EVIDENCE

Plaintiffs contend that the trial court should have ruled admissible the criminal history of Guinan, Jr., and many telephone calls he made to a judge's chambers in an out-of-state case. Plaintiffs contend that this evidence showed Guinan, Jr.'s "motive" in allegedly harassing plaintiffs. We disagree.

This Court reviews for an abuse of discretion a trial court's decision regarding whether to admit evidence. *Lopez v Gen Motors Corp*, 224 Mich App 618, 634; 569 NW2d 861 (1997). "An

---

(a) At least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction.

(b) At least 1 of the actions constituting the offense is in violation of a condition of probation, a condition of parole, a condition of pretrial release, or a condition of release on bond pending appeal.

(c) The course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the same household as the victim.

(d) The individual has been previously convicted of a violation of this section or section 411h.

By stating that the PPOs "are a necessary element to establish aggravated stalking," Oehmke acknowledged that plaintiffs were focusing on MCL 750.411i(2)(a).

[6] We emphasize that plaintiffs were and are not seeking to add a separate count of "stalking" but specifically refer to an added count of "aggravated stalking."

[7] Oehmke acknowledged at his deposition that the PPOs had not been served at the time of the pickup truck incident.

abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

"Other-acts evidence is only admissible under MRE 404(b)(1) when a party shows that it is (1) offered for a proper purpose, i.e., to prove something other than the defendant's propensity to act in a certain way, (2) logically relevant, and (3) not unfairly prejudicial under MRE 403." *Rock v Crocker*, 499 Mich 247, 257; 884 NW2d 227 (2016). MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Plaintiffs cite only *People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017), in their discussion of this issue, evidently for the well-known principle that evidence of other bad acts is generally only admissible if it is probative for a purpose other than showing propensity. They claim that the other bad acts were admissible because the acts showed Guinan, Jr.'s motive for allegedly harassing plaintiffs, in that he bore a grudge against what plaintiffs refer to as "officialdom." This argument is not persuasive. First, Guinan, Jr.'s criminal history—consisting mainly of misdemeanors and traffic offenses—standing alone, does not prove that he had any animus toward "officialdom." In other words, that he was convicted of offenses simply does not prove any such animus against those who convicted him.

Second, that Guinan, Jr., made an excessive number of telephone calls to a judge's chambers in a different case arguably does tend to show that he had a propensity toward harassment—but this type of propensity evidence is precisely the type of evidence that MRE 404 seeks to exclude. And even assuming, arguendo, that the multiple telephone calls showed an animus toward "officialdom," plaintiffs were not part of "officialdom" merely by virtue of being lawyers. Indeed, the dispute between plaintiffs and Guinan, Jr., arose when they were interacting with Guinan, Jr., as private citizens walking along a public road. As such, the probative value of the telephone-calls evidence was extremely minimal, and the trial court did not abuse its discretion by ruling that the evidence would be excluded under MRE 403.[8]

## IV. CHOICE OF LAW

Plaintiffs contend that the court should have applied Florida law to the count in their complaint labeled "slander and defamation," and they further contend that Florida law applies only a qualified privilege, not an absolute privilege, with regard to tips given to law-enforcement officers. Plaintiffs additionally argue that, even if Michigan law is applied, this Court should rule that no absolute privilege exists in the present case because Guinan, Jr., was not a victim of or a

---

[8] Plaintiffs mention the PPOs in their statement of questions presented for this issue but do not make an argument about them in the body of their argument section. Accordingly, the argument about the PPOs is deemed abandoned. See, e.g., *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003).

witness to the pipe-bombing situation. Instead, they contend Guinan, Jr., acted maliciously and should be liable for his false FBI tip.[9] We disagree.

This Court reviews choice-of-law questions de novo. *Frydrych v Wentland*, 252 Mich App 360, 363; 652 NW2d 483 (2002). "The applicability of a privilege is a question of law that is also reviewed de novo." *Eddington v Torres*, 311 Mich App 198, 199-200; 874 NW2d 394 (2015).

Guinan, Jr., is correct in stating that, contrary to outdated, unpublished caselaw cited by plaintiffs, Michigan applies an absolute privilege to statements such as the tip Guinan, Jr., provided to the FBI. In *Eddington*, the plaintiff alleged that a person had falsely reported to the police that the plaintiff had committed four crimes. *Id*. at 199. The plaintiff alleged that the accusations were "made with knowledge that they were untrue or with reckless disregard for the truth." *Id*. "[T]he trial court concluded that the statements were subject to an absolute privilege and could not be the basis of a defamation claim," and this Court affirmed. *Id*. This Court stated that "reports of crimes or of information about crimes to the police are absolutely privileged," and noted that "the privilege attache[s] even if the reporting party made the report maliciously." *Id*. at 202. This Court continued:

> [W]e could not reliably have practical law enforcement if crime victims, or those with knowledge of crimes, were forced to risk a lawsuit upon reporting what they know or what they suffered. The law is not blind to the fact that such reports are occasionally maliciously fictitious: it is a crime to lie to a police officer about an ongoing investigation, MCL 750.479c, or to make an intentionally false report to the police, MCL 750.411a. . . . [T]he . . . privilege would not insulate a person against an investigation or charge for such crimes. Consequently, false reports may not be made with impunity. [*Id*.]

There is an "absolute privilege that arises in the context of a defamation claim and covers any report of criminal activity to law enforcement personnel," and that if this were to change, such change must come from the Legislature or the Michigan Supreme Court. *Id*. at 203.

Plaintiffs' attempt to argue that there is no absolute privilege for Guinan, Jr.'s tip because the law is allegedly in flux or because Guinan, Jr., was somehow not a witness to the alleged crime in the tip is belied by the clear language of *Eddington*. Plaintiffs are clearly disappointed that Guinan, Jr., was not criminally charged in either state or federal court as a result of the tip, but this absence of charges does not dispense this Court's obligation to follow the rule of *Eddington*. If Michigan law is applied, then the defamation count is clearly untenable.

The problem with plaintiffs' argument about Florida law is twofold. First, plaintiffs, while fully acknowledging that Michigan law applies to the remainder of their claims, set forth absolutely no analysis or authority regarding whether dépeçage is applicable in Michigan. See *Olmstead v Anderson*, 428 Mich 1, 4 n 2; 400 NW2d 292 (1997) ("It should be noted that some courts have decided different issues in the same case by applying the law of different states. This practice is

---

[9] The trial court ruled that the tip was subject to an absolute privilege, but it did not make an express ruling on the choice-of-law issue.

called dépeçage."). "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted). Accordingly, we decline to address whether dépeçage is an accepted practice in Michigan. *Id*.

In any event, plaintiffs cite a single Florida case in support of their argument about defamation, *Fridovich v Fridovich*, 598 So2d 65 (Fla, 1992). Plaintiffs contend that only a qualified privilege exists in Florida, such that malicious accusations made to the police can be used as the basis for a defamation suit. But in *Fridovich*, the appellate court stated, "We thus hold, as a majority of the other states have held in this context, that defamatory statements voluntarily made by private individuals to the police or the state's attorney *prior to the institution of criminal charges* are presumptively qualifiedly privileged." *Id*. at 69 (emphasis added). The plaintiff in that case was indicted on the basis of a false report to law enforcement. *Id*. at 68. The plaintiff's "siblings instituted a conspiracy to have him falsely arrested, indicted, convicted, and sentenced for the first-degree murder of his own father, a charge that carries a maximum penalty of death." *Id*. Plaintiffs cite *Fridovich*, yet utterly fail to set forth how Florida law governs or might govern a situation such as the present one, wherein the FBI quickly dismissed the false tip as not credible and no charges were pursued. In their complaint, plaintiffs cite *Ghanam v Does*, 303 Mich App 522, 545; 845 NW2d 128 (2014), for the proposition that "[a]ccusations of criminal activity are considered 'defamation per se' under the law and so do not require proof of damage to the plaintiff's reputation."[10] But this is *Michigan* caselaw. We find that plaintiffs' briefing is deficient because they are asking this Court to search for Florida authority to sustain their position that they have set forth, under Florida law, a prima facie case of defamation.[11] This Court should not be forced to do so. *Wilson*, 457 Mich at 243.

Finally, even accepting that plaintiffs' briefing is sufficient for us to entertain whether Florida law should apply to the defamation claim, we find that Michigan law is appropriate in light of the facts that (1) plaintiffs were alleging damages to both Oehmke and Brovins as a result of the FBI tip; (2) Brovins is admittedly a resident of Michigan; (3) the biggest "audience" regarding the false claim was located in Michigan, because of a published newspaper article, whereas Oehmke stated that only two people in Florida knew of the claim; and (4) most importantly, the main FBI "interview" took place in Michigan. The presumption for applying the law of the forum state

---

[10] Only Oehmke was accused of criminal activity in the FBI tip.

[11] Plaintiffs even go so far as to ask this Court to grant summary disposition to *them* on the defamation claim and to remand the claim for a trial regarding only damages.

(i.e., Michigan) has not been overcome. *Sutherland v Kennington Truck Serv, Ltd*, 454 Mich 274, 285-286; 562 NW2d 466 (1997). See also, generally, *Olmstead*, 428 Mich at 28; *Frydrych*, 252 Mich App at 363-364.[12]

Affirmed. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Anica Letica

---

[12] As a final comment, we note that plaintiffs are attempting to inject additional issues into their appeal by way of their appellate brief's statement of facts, relying on proceedings that are not part of the lower court record for the instant case. We disregard these arguments because of improper briefing and because of the improper attempt to expand the record on appeal. *Detroit Leasing Co v Detroit*, 269 Mich App 233, 237; 713 NW2d 269 (2005).