*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HIRAM SETTLER,

       Plaintiff-Appellant,

v

AUTO-OWNERS INSURANCE COMPANY,

       Defendant/Third-Party Plaintiff-
       Appellee,

and

AUTO CLUB INSURANCE ASSOCIATION,

       Third-Party Defendant.

UNPUBLISHED
August 10, 2023

No. 361189
Wayne Circuit Court
LC No. 17-006883-NF

Before: REDFORD, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case comes before us for decision for a second time. The Court's first opinion set forth the relevant background facts as follows:

> Plaintiff was injured in a motor-vehicle accident on January 21, 2017, when he was traveling in a vehicle rented by his second cousin, Michael Billington. Plaintiff was listed as a secondary driver on the rental agreement between Billington and North End Collision, an auto-repair shop that was working on Billington's personal vehicle. While out of town, Billington allowed plaintiff to use the rented vehicle because plaintiff did not have his own transportation.

-1-

According to the police report prepared after the accident, an unidentified driver ran a stop sign and collided with plaintiff. Officer Mary Kue testified that plaintiff refused medical care and asked to be taken to the police department where he would be picked up by a friend who was also a police officer. That officer later dropped off plaintiff at his girlfriend's house. Plaintiff's then-girlfriend, Danielle Smith, stated that plaintiff appeared injured when he arrived at her house. Approximately one hour later, while sitting on the edge of a bed, plaintiff passed out and fell to the floor. Smith called emergency services, which transported plaintiff to the hospital. Plaintiff was diagnosed with a traumatic head injury and placed in a medically-induced coma; he spent approximately two weeks in the hospital and another three months at a rehabilitation facility.

As a result of injuries that he sustained in the accident, plaintiff sought benefits, including attendant-care services, under the insurance policy between defendant and North End Collision. Although the parties dispute whether plaintiff personally completed the application for benefits, defendant produced an application form on which plaintiff purportedly stated that he did not previously experience the same or similar symptoms to those he experienced as a result of the accident. The application form also stated that the injury occurred while plaintiff was at work.

Approximately three months after plaintiff sought benefits from defendant, he filed this lawsuit seeking payment of all no-fault benefits to which he asserted he was entitled. Defendant moved for summary disposition under MCR 2.116(C)(10), asserting that under the fraud provision of the insurance policy, defendant was entitled to deny coverage because plaintiff made numerous fraudulent statements with respect to the accident, his prior medical history, and his need for attendant-care services. The trial court concluded that the fraud provision of the insurance policy was enforceable against plaintiff and granted defendant's motion based on plaintiff's submission of attendant-care forms, which the trial court concluded contained fraudulent statements about services needed or performed. [*Settler v Auto-Owners Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued December 22, 2020 (Docket No. 350925), p 1-2 (footnote omitted).]

Plaintiff appealed the trial court's order, contending, as relevant here, that defendant was not entitled to deny all coverage on the basis of the purported fraud in the attendant-care forms. On appeal, we concluded that the trial court erred when it granted defendant's motion for summary disposition as to all of plaintiff's claims because under *Meemic Ins Co v Fortson*, 506 Mich 287; 954 NW2d 115 (2020), an insurer may only void the policy when the fraud is committed when procuring the policy:

[F]raud provisions in insurance policies "are valid when based on a defense to mandatory coverage provided in the no-fault act itself or on a common-law defense that has not been abrogated by the act." An insurance policy, however, cannot "go beyond either the statutory or common-law defenses and thereby limit mandatory coverage to a greater extent than either the statute or the common law."

"To allow such provisions would reduce the scope of the mandatory coverage required by the no-fault act, as supplemented by the common law. It would, in short, vitiate the act. This result is plainly prohibited by our longstanding caselaw that forbids parties from contracting to vitiate an insured's duty to promptly pay benefits as required by the no-fault act."

A fraud defense is not a statutory defense to PIP coverage under the no-fault act. Moreover, "[a]t common law, the defrauded party could only seek rescission, or avoidance of the transaction, if the fraud related to the inducement to or inception of the contract." Thus, under the no-fault act, an insurer may only deny all coverage under an auto-insurance policy based on fraud if the policy itself was procured by fraud, but not if the fraud related to postprocurement activity.

Defendant does not assert that the auto-insurance policy in this case was procured by fraud, nor does defendant assert that the rental agreement, which led to plaintiff being covered under the policy, was procured by fraud. Rather, defendant asserts that plaintiff's application for benefits and statements made during litigation were fraudulent. Under *Meemic*, such alleged fraud cannot be the basis for denial of plaintiff's entitlement to benefits under the fraud provision of the auto-insurance policy. The trial court, which did not have the benefit of *Meemic* when it rendered its decision, erred when it concluded that defendant was entitled to deny all coverage to plaintiff based on purportedly false statements that plaintiff made after the insurance policy was in place. [*Settler*, unpub op at 3-4 (citations omitted).]

And under *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719; 957 NW2d 858 (2020), we held that defendant could not rely on allegedly fraudulent statements made by defendant in his attendant-care forms because those "statements" were made after the litigation commenced:

Generally speaking, fraudulent statements made after litigation is initiated cannot form the basis for an insurer to deny coverage altogether. False statements made during discovery do not provide grounds to void the policy because, by that time, the claim has been denied and the parties are adversaries in litigation. Once suit is brought, what is truth and what is false is a matter for a jury or a judge acting as factfinder. We read as *Haydaw* standing for the unremarkable proposition that an insurer cannot assert that it denied a claim because of fraud that occurred after litigation began; the fraud must have occurred before the legal proceedings.

Plaintiff filed his complaint against defendant on May 5, 2017. The attendant-care forms on which defendant relies were submitted for services allegedly rendered in February 2018 and beyond. Thus, the representations upon which defendant relies for its fraud defense are all postlitigation representations made by plaintiff. Under *Haydaw*, these statements cannot form the basis for denial of coverage. The trial court, which did not have the benefit of *Haydaw* when it rendered its decision, erred when it concluded otherwise.

The only source of statements that may form the basis of a viable fraud defense would be those made by plaintiff on his application for benefits. Defendant produced an application form, purportedly executed by plaintiff, in which he denied experiencing in the past the same or similar symptoms as those from the auto accident. The application form also stated that the injury occurred while plaintiff was at work, and plaintiff admitted during the course of discovery that this was not true. Plaintiff also testified, however, that he did not recognize the application for benefits and did not recognize his purported signature on the application form. [*Settler*, unpub op at 4-5 (quotation marks and citations omitted).]

Thus, we vacated the trial court's order and remanded for the trial court to address "whether the application for benefits contained false statements" and to "analyze the case through the framework set forth in *Meemic* and *Haydaw*, both issued after the trial court rendered its decision." *Settler*, unpub op at 5. On remand, defendant filed a renewed motion for summary disposition under MCR 2.116(C)(10). The trial court granted the motion, concluding that there was no genuine issue of material fact that plaintiff committed fraud in connection with his submission of the application for benefits. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Hastings Mutual Ins Co v Grange Ins Co of Mich*, 319 Mich App 579, 583; 903 NW2d 400 (2017). "A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Lockport Twp v Three Rivers*, 319 Mich App 516, 519; 902 NW2d 430 (2017) (quotation marks and citation omitted). "In deciding a motion under subrule (C)(10), the trial court views affidavits and other documentary evidence in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted). A trial court properly grants a motion under MCR 2.116(C)(10) when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). However, "[t]he trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mutual Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

Unpreserved issues are reviewed for plain error. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 427 (quotation marks and citations omitted).

## III. ANALYSIS

### A. LAW-OF-THE-CASE DOCTRINE

As a threshold matter, there is a dispute between the parties as to whether the law-of-the-case doctrine applies to this appeal. Under that doctrine, "a ruling by an appellate court with regard to a particular issue binds the appellate court and all lower tribunals with respect to that issue, but

only if the facts remain materially the same." *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 110; 888 NW2d 295 (2016) (quotation marks and citation omitted). The purpose of the law-of-the-case doctrine "is the need for finality of judgments and the lack of jurisdiction of an appellate court to modify its judgments except on rehearing." *Id*. (quotation marks and citation omitted). "[T]he law-of-the case doctrine applies only to issues actually decided, either implicitly or explicitly, in the prior appeal." *AFT v Michigan*, 334 Mich App 215, 225; 964 NW2d 113 (2020) (quotation marks and citation omitted). The doctrine does not apply, however, "where there has been an intervening change of law." *Sumner v Gen Motors Corp*, 245 Mich App 653, 662; 633 NW2d 1 (2001). For this exception to apply, "the change of law must occur after the initial decision of the appellate court." *Freeman v DEC Int'l, Inc*, 212 Mich App 34, 38; 536 NW2d 815 (1995).

Defendant contends that this Court is not bound under the law-of-the-case doctrine to follow its prior opinion because after that decision was issued, the Court issued *VHS of Mich, Inc v State Farm Mutual Auto Ins Co*, 337 Mich App 360; 976 NW2d 109 (2021). According to defendant, that opinion represented an intervening development in the law and negates the need to adhere to the doctrine. In other words, defendant asks the Court to expand its analysis beyond the application for benefits to conclude that plaintiff committed fraud not only in the application but also during his deposition testimony and in his submission of attendant-care forms.

In *VHS of Mich*, 337 Mich App at 362-363, the plaintiff, a medical provider and assignee of benefits from an injured claimant, filed suit against the defendant-insurer asserting that the defendant failed to pay for charges incurred in connection with the treatment of the claimant. The defendant answered the complaint, asserting generally in its affirmative defenses that the claimant "made statements [to the defendant] which do not comport with known facts." *Id*. at 363. After the parties conducted discovery, including into issues concerning the claimant's alleged misrepresentations, the defendant sought leave to amend its affirmative defenses to plead fraud with particularity. *Id*. at 370. The trial court denied the defendant's motion on the basis of undue delay. *Id*. at 372.

We concluded the trial court abused its discretion when it denied the defendant's motion to amend. *Id*. at 373. As relevant here, the plaintiff argued that any amendment would be futile under *Haydaw*, "in which this Court concluded that a fraud provision in a policy does not apply to statements made during the course of litigation . . . ." *VHS of Mich*, 337 Mich App at 376 (quotation marks and citation omitted). The plaintiff also argued the amendment would be futile under *Meemic*, in which the Michigan Supreme Court "held that fraud defenses are now limited to what is covered in the no-fault act and defenses available under common law." *VHS of Mich*, 337 Mich App at 376. This Court rejected the plaintiff's arguments, stating:

> Plaintiff's futility argument fails for two reasons. First, the line of cases on which plaintiff relies is procedurally distinguishable from this case. In *Haydaw*, *Meemic*, and *Williams* [*v Farm Bureau Mutual Ins Co of Mich*, 335 Mich App 574; 967 NW2d 869 (2021)], the pleadings had been completed and litigation had proceeded to the summary-disposition phase. Comparatively, in this case, the discovery period had not yet expired when defendant moved to amend its affirmative defenses, and no motion for summary disposition had been filed by either party. Second, this case is factually distinguishable from *Haydaw*, *Meemic*,

and *Williams*; in those cases, the insurers sought to rescind or void the subject insurance policies on the basis of allegations of fraud on the part of the insured. Here, defendant has not sought to rescind its policy. Rather, it is seeking to plead fraud with particularity in order to justify denial of claimed benefits. Unlike the insurer in *Williams*, in this case, defendant claims that the evidence concerning the accident, injury, and treatment would be insufficient to qualify for PIP benefits. Indeed, in *Williams*, this Court reiterated that a fact-finder is free, and has always been free, to conclude that some or all of plaintiff's claimed benefits were properly denied by a defendant insurer. [*VHS of Mich*, 337 Mich App at 377 (quotation marks and citations omitted; quotation cleaned up).]

Contrary to defendant's arguments here, the Court in *VHS of Mich* did not articulate a change in the law with respect to fraud and insurance benefits such that the law-of-the-case doctrine should not apply in this case. The Court explicitly stated it was *factually distinguishing* the case from *Haydaw*, *Meemic*, and *Williams*, and nowhere in the quoted language above does the Court purport to articulate a new rule or change in the law. See *Sumner*, 245 Mich App at 657-658 (rejecting the plaintiff's argument that the law-of-the-case doctrine required a new trial where an intervening case overruled the holding in *Sumner* in the parties' first appeal); *Freeman*, 212 Mich App at 38-39 (stating that the law-of-the-case doctrine did not apply in an appeal concerning the Uniform Commercial Code where, after the first appeal, the Court concluded that privity was not required in economic loss cases involving commercial buyers of manufactured goods). Defendant's central claim is that while it is not permitted to void a policy on the basis of postprocurement fraud, it is entitled to deny claims on that basis. While the Court in *VHS of Mich* affirmed this principle, such a rule existed before this Court issued its original opinion in *Settler*. Indeed, in *Meemic*, 506 Mich at 304 n 10, the Michigan Supreme Court set forth the same rule, stating that insurers faced with postprocurement fraud "can reject fraudulent claims without rescinding the entire policy."

In sum, regardless of our view of the propriety of the prior decision in this case, the law-of-the-case doctrine applies, and we must adhere to it. See *Brownlow*, 315 Mich App at 110. Accordingly, the appropriate focus is whether plaintiff's representations in his application for benefits permitted defendant to deny his claims.

B. APPLICATION FOR BENEFITS

Plaintiff first argues that the trial court erred when it granted defendant's renewed motion for summary disposition because the application for benefits was postprocurement, and any such fraud cannot form a basis to dismiss plaintiff's entire claim. We disagree.

In *Meemic*, the Michigan Supreme Court held that an antifraud provision in an insurance contract is only "valid and enforceable to the extent it contains statutory defenses or common-law defenses that have not been abrogated." *Meemic*, 506 Mich at 302-303. The no-fault act contains no statutory fraud defense. *Id*. at 303-304. Under the common law, a "defrauded party could only seek rescission, or avoidance of the transaction, if the fraud related to the inducement to or inception of the contract." *Id*. at 305. The Michigan Supreme Court stated, however, that such a rule does not leave insurers without recourse, because they may "reject fraudulent claims without rescinding the entire policy." *Id*. at 304 n 10.

In *Haydaw*, 332 Mich App at 726-727, this Court further held that fraudulent statements made during litigation cannot serve as the basis for a fraud defense. The Court explained:

> False statements made during discovery do not provide grounds to void the policy because, by that time, the claim has been denied and the parties are adversaries in litigation. Once suit is brought, what is truth and what is false are matters for a jury or a judge acting as fact-finder. And if it can be shown that a party intentionally testified falsely, it is up to the court to determine what, if any, sanction is proper. Indeed, defendant is essentially seeking dismissal of plaintiff's claim on the basis of alleged discovery misconduct. Given that questions of credibility and intent are generally left to the trier of fact, it is doubtful whether dismissal for intentionally false deposition testimony is ever appropriate. In any event, it is up to the trial court to determine whether a drastic sanction such as dismissal is warranted for discovery misconduct, including untruthful deposition testimony. To be clear, once an insurer fails to timely pay a claim and suit is filed, the parties' duties of disclosure are governed by the rules of civil procedure, not the insurance policy. [*Id*. at 726-727 (quotation marks and citation omitted; quotation cleaned up).]

Regardless of whether plaintiff's application for benefits is considered pre- or postprocurement, there is no dispute that the application was submitted to defendant before litigation commenced. Accordingly, even if the application is considered postprocurement, defendant was entitled to deny coverage on the basis of the purported fraud.[1] Plaintiff's argument that the application was postprocurement and, therefore, cannot serve as a basis to deny coverage, is unconvincing because it is at odds with the holdings in *Meemic* and *Haydaw*. While defendant was not entitled to void the policy as a result of plaintiff's application for benefits, it was entitled to deny the claims that flowed from it. Thus, the trial court did not err when it concluded that plaintiff's application for benefits could serve as a basis for defendant's fraud defense and denial of coverage.

Next, plaintiff argues the trial court erred when it granted defendant's renewed motion for summary disposition because it decided questions of disputed fact related to the purported fraud. Plaintiff contends that he suffered a severe head injury that resulted in him being placed in a medically-induced coma. Shortly after plaintiff's release from the hospital, the application for benefits was submitted to defendant. Accordingly, plaintiff asserts there was a question of fact whether plaintiff lacked the intent to deceive when making the representations in the application. In addition, plaintiff argues the trial court resolved a disputed issue of fact when it determined that the signature on the application belonged to plaintiff, where plaintiff denied that the signature was his.

In order to establish fraud, defendant must show:

---

[1] Plaintiff, like defendant, is bound by this Court's original decision under the law-of-the-case doctrine, in which this Court stated that "[t]he only source of statements that may form the basis of a viable fraud defense would be those made by plaintiff on his application for benefits." *Settler*, unpub op at 4.

(1) that [plaintiff] made a material representation; (2) that it was false; (3) that [plaintiff] made the representation knowing that it was false or made it recklessly without knowledge of its truth; (4) that [plaintiff] intended that [defendant] would act on the representation; (5) that [defendant] relied on the representation; and (6) that [defendant] suffered injury as a result of having relied on the representation. [*Lucas v Awaad*, 299 Mich App 345, 363; 830 NW2d 141 (2013).]

In *Urech v Pioneer State Mutual Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued July 2, 2019 (Docket No. 339784), p 8,[2] this Court rejected the plaintiff's argument that her head injury created an issue of fact whether she knew she made material misrepresentations in her attendant-care forms. While the Court agreed that "a person with a traumatic brain injury that causes short-term memory loss may lack the intent necessary to establish fraud," *id*. at 7, the plaintiff did not come forward with any evidence "that the traumatic brain injury and its associated memory problems affected [the plaintiff's] ability to understand that the attendant-care forms were inaccurate when she signed them." *Id*. at 8. Thus, the Court stated that absent such evidence, "we can only speculate that because she had memory issues and a brain injury she may not have appreciated or realized that the forms she was signing contained materially false statements." *Id*. at 8-9.

Similarly, in *Woody v Auto Club Ins Ass'n*, unpublished per curiam opinion of the Court of Appeals, issued February 11, 2020 (Docket No. 346182), p 4-5, the Court affirmed the trial court's order granting summary disposition in favor of the defendant, concluding that the plaintiff failed to demonstrate that he lacked the requisite intent to commit fraud as a result of a head injury. The Court disagreed that the plaintiff's injuries were sufficient to rebut the defendant's fraud defense, stating:

[I]n the absence of evidence indicating that plaintiff's memory loss affected his ability to understand that the forms he signed contained false statements, it is speculative to conclude that his memory issues caused him to fail to realize or appreciate that the answers he signed contained materially false statements. Furthermore, plaintiff did not assert, at any point during the proceeding, that he was incompetent to bring this case or testify in support of this case. [*Id*. at 4-5 (citation omitted).]

In this case, plaintiff claims that defendant did not carry its burden to show that plaintiff intended to make a material misrepresentation in connection with his application for benefits because plaintiff suffered a traumatic brain injury shortly before the application was submitted. Plaintiff is correct that there is evidence in the record that he suffered a head injury before the application was submitted. Plaintiff was placed in a medically-induced coma as a result of a traumatic head injury and cerebral hematoma after he passed out and hit his head in his girlfriend's apartment. Plaintiff, however, did not submit any evidence that there was a causal connection between his head injury and his ability to truthfully answer questions in his application. In opposing defendant's renewed motion for summary disposition, plaintiff was required to rely on

---

[2] Unpublished decisions from this Court are not binding but may be considered for their persuasiveness. *Eddington v Torrez*, 311 Mich App 198, 203; 874 NW2d 394 (2015).

something more than "pure conjecture and speculation" to link his head injury with any purported memory loss. See *West v Gen Motors Corp*, 469 Mich 177, 188; 665 NW2d 468 (2003). Thus, as in *Woody* and *Urech*, we conclude that there is no question of fact for trial on the issue of whether he lacked the requisite intent to make a material misrepresentation.

Plaintiff also contends that the trial court erred when it determined that the signature on the application for benefits was his.[3] According to plaintiff, the determination was a factual one reserved for the jury. Generally, "[t]he trial court is not permitted to . . . resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Dells*, 301 Mich App at 377. But even if the trial court improperly resolved a disputed question of fact when it concluded that the signature on the application belonged to plaintiff, the trial court's decision to grant summary disposition was not plainly erroneous.

During plaintiff's deposition, he was asked whether he signed the application for benefits. Rather than denying that the signature was his, plaintiff responded:

> I can't say it look like I would write it. That don't even look like—I don't know. I don't know. It could be. I can't say yes. I can't say no. I mean it look like somebody scribbled my name on there.

Just as plaintiff's unsupported assertions that his head injury resulted in a lack of memory causing false statements on his application were insufficient to defeat defendant's motion for summary disposition, the same is true with respect to plaintiff's nondenial concerning his signature. Plaintiff's lack of knowledge of whether it was his signature on the application did not create an issue of fact for trial. See *West*, 469 Mich at 188. Accordingly, the trial court did not err when it granted defendant's renewed motion for summary disposition.

Affirmed. Defendant, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ James Robert Redford
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick

---

[3] In the trial court, plaintiff did not argue that the question of whether the signature on the application belonged to him was a factual one. Thus, the Court's review of this argument is for plain error. See *Demski*, 309 Mich App at 426-427.